FALL RIVER UNION BANK *vs.* NOAH STURTEVANT, Assignee.

One partner has no right without the knowledge or consent of the other partner, to indorse a note belonging to the firm, to raise money to pay a separate debt of his own; and a bank taking such note, the cashier knowing the fraud, cannot prove the note in insolvency against the partnership.

THIS was an appeal by the assignee of the estate of John Hull & Co., insolvent debtors, from the allowance by a commissioner of insolvency of the following note, held by the Fall River Union Bank: "Fall River, June 20, 1850. Ten months after date, we promise to pay to the order of John Hull & Co., one thousand dollars. Value received. Payable at Massasoit Bank. Dean & Hull. Witness, C. C. Dillingham."

At the trial in this court, April term, 1852, before *Metcalf*, J., the evidence was as follows:

This note, and others of the same date, were given by Asa Dean and Charles F. Hull, to John Hull and Albert G. Howard, partners, doing business under the name of John Hull & Co., for their partnership stock. John Hull had formerly been a member of another firm of the same name, consisting of Cook Borden, William Coggeshall, and himself, which was dissolved on the 1st of April, 1848, when several notes were outstanding against that firm; said John Hull, after the dissolution, often took up said outstanding notes by giving his own notes, indorsed by said Borden and Coggeshall, who constituted another firm under the name of Cook Borden & Co.; that one of these notes so given and indorsed for the debt of Hull, Borden, and Coggeshall, for the sum of five hundred dollars, was discounted by the Fall River Union Bank, and was lying over on the 27th of September, 1850; that John Hull, who had been applied to by said Coggeshall on that day, indorsed the note in question with the name of John Hull & Co., without the consent or knowledge of Albert G. Howard, his partner, for the purpose of having it discounted by said bank, to take up the aforesaid five hun-

dred dollar note lying over in the bank; that the directors agreed to discount it for that purpose on condition that said Cook Borden & Co. would indorse it; that Borden and Coggeshall were directors of the bank, and Coggeshall also its cashier, and were present on the day when said note was offered and acted on; but it did not appear that any statements were made by them in regard to the note: That they did not, in fact, indorse said note, but that it was received by the cashier at the bank, and has since been there, the amount thereof being credited, by direction of the cashier, to Cook Borden & Co., on the 30th of September, 1850; and the said five hundred dollar note being paid and taken up by the said Coggeshall from the proceeds; that the note was placed by the cashier among the notes belonging to the bank, and has been included in the periodical statements of the assets of the bank, made by the directors under the laws of Rhode Island; but it did not appear that the directors knew that it was not so indorsed, until it was offered for proof; that on the day when this one thousand dollar note fell due, it was presented for payment at the Massasoit Bank, where payment was refused for want of funds of the makers, and was also presented to Asa Dean for payment, and that notice of non-payment was afterwards duly given to John Hull and Albert G. Howard, as indorsers; that when the said note was proposed to the bank for discount, it was not itself presented, but a description of it was entered by the cashier upon the books of the bank, as follows: " September 27, 1850. Offerer, John Hull. Promisor, Dean & Hull. Indorsed, John Hull & Co. Time, 2.08. Amount, $1,000." That this was the usual mode of application for discount; that on September 20th, the week before this note was discounted, another note of Dean & Hull, for the same amount, on six months, was offered for discount by John Hull, but was not discounted, for want of funds, and that this note had been discounted at the Massasoit Bank, on the application of John Hull, and the proceeds applied to the payment of the debts of Hull & Howard; that when John Hull was applied to by said Coggeshall, cashier, to take up the note of five hundred

dollars, he stated to him that he had no other note which he could use for that purpose, except the one thousand dollars in question, which, he said, belonged to Hull & Howard, which he handed to Coggeshall, indorsed as aforesaid; that said John Hull and Albert G. Howard stopped payment on the 23d of September, 1850, (but it did not appear that this fact was known to the plaintiff,) and applied to a commissioner of insolvency on the 30th of October, 1850, for the benefit of the insolvent laws, and that a warrant issued against them, (John Hull & Co.,) on that day, and that they were then insolvent; that on the 28th of September, 1850, John Hull and William Coggeshall conveyed the property of the former firm of John Hull & Co., (Hull, Borden, and Coggeshall,) to Cook Borden, a member thereof, by instruments which are made part of this report. [The nature of these documents became immaterial.] These instruments were made by the advice of said Coggeshall, and given to said Hull, and the reason which said Coggeshall assigned therefor, was, that if Hull & Howard should go into insolvency, it would be an everlasting job to settle up the old concerns of Hull, Borden, and Coggeshall. That John Hull's handwriting was well known by said Coggeshall and Borden, and by Oliver Chase, another of the directors present when the note was offered and acted on as aforesaid.

The case was taken from the jury by consent of parties, to be reported for the opinion of the whole court on the question, whether said bank was entitled to prove said note as a claim against the estate of John Hull and Albert G. Howard.

*T. D. Eliot,* for the bank. 1. The bank obtained a title to the note in the due course of business, and *bonâ fide,* and no fact was known to them which affects the right of John Hull to have the paper discounted; and the fact, that a part of the proceeds were to pay a debt of his own, cannot affect their title. *Ridley* v. *Taylor,* 13 East, 175.

2. Notice or knowledge of facts by an individual director, not given to him officially, is not notice to the bank, especially if the interests of the individual are adverse to those of the bank. *Housatonic Bank* v. *Martin,* 1 Met. 294; *Hallowell*

& *Augusta Bank* v. *Howard*, 14 Mass. 184; *Washington Bank* v. *Lewis*, 22 Pick. 31; *Commercial Bank* v. *Cunningham*, 24 Pick. 276; *Arnold* v. *Brown*, 24 Pick. 89.

*E. Williams*, for the assignee.

SHAW, C. J. The question in this case arises mainly upon a somewhat complicated state of facts, to be found by the court, upon evidence agreed to. It is an appeal from the decision of the commissioner of insolvency, allowing a claim against the estate of John Hull & Co., insolvents, as indorsers of a note made by Dean & Hull, and held by the Fall River Union Bank. Without stating the result of an investigation of facts, the court are of opinion, that the bank have no good cause of action against said insolvents, as indorsers, and, therefore, that this claim ought not to be allowed against their estate.

1. It is clearly established, that the note was indorsed by John Hull, in the name of the firm of John Hull & Co., without the knowledge or consent of Howard, his partner, to raise money to pay a separate debt of his own, and was, of course, a fraud upon his partner and upon the partnership creditors. This fact was known to Coggeshall, the cashier of the bank, through whose agency the title of the bank was acquired, and by whose knowledge the bank must stand affected. The note was not discounted in the ordinary course of business, but was received in payment of a smaller note lying at the bank dishonored.

2. But, if John Hull had power to bind his partner, and as between them to make a valid indorsement of the note, we think there is evidence, if not conclusive, at least proper to go to a jury, to prove that the note was indorsed as collateral security for an outstanding debt, in contemplation of insolvency, and so would be held void as against the creditors of the firm.

But being of opinion, upon the other ground stated, that the bank have no right to prove this claim, the decision of the commissioner of insolvency is reversed, and the claim disallowed. Certificate to this effect, to be sent to the commissioner.